**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

v.                                    CASE NO. 8:19-cr-579-T-36CPT


ERIC MANUEL ROBLES RIVERA,

     Defendant.
_____/

**DEFENDANT ERIC MANUEL ROBLES RIVERA'S**
**SENTENCING MEMORANDUM**

The defendant, Eric Manuel Robles Rivera, by and through the undersigned counsel, hereby files his sentencing memorandum to assist the Court in fashioning an appropriate sentence in this case. In this memorandum, the defendant will address the outstanding objections to the application of the United States Probations Office's Presentence Report and the grounds for a variance from the applicable range of sentencing guidelines.

**A.** **Background**

Mr. Robles Rivera  is a forty-five-year-old man. He is before the court after he pleaded guilty to Count One of the Indictment which alleges that on or about March 9, 2017, the defendant did commit the offense of Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). After his arrest Mr. Robles Rivera quickly indicated he wanted to enter a plea of guilty and to take responsibility for the offense. He pleaded guilty on April 23, 2020.

**B. Outstanding Objections to Presentence Report (Doc. 59)**

**1. The  Base Offense Level Should be Level 22**

Mr. Robles Rivera objected in writing to paragraphs 14 and 15 of the initial Presentence Report. (Doc. 55). Specifically, Mr. Robles Rivera objected to the weight of the heroin in the presentence report contending the weight should be less that 60 grams corresponding to base offense level of 22. The final PSR (Doc. 59) did not adopt the objections to the drug quantity. The lab report indicating over 60 grams of heroin was possessed contains several assumptions and estimates and should not be relied upon to calculate the quantity of drugs. The lab report indicates that drug weight came out to 60.3 grams of heroin but recognized the results with a standard deviation of +/- .7grams. The chemist also acknowledges that the net weight is an extrapolated weight, not an exact weight. The chemist had 377 units of the alleged heroin yet, he tested only 28 of the units. The lab reported "net weight" is an estimated weight based on an extrapolated value from a small sample size. Further evidence of the uncertainty in the report of the weight of the heroin is the chemist's statement in the report that "the weight is an extrapolated value based on the weights of 2 groups of 9 units each." The report further states "The net weight uncertainty level represents an expanded uncertainty estimate at the 95% level of confidence."

The government bears the burden of establishing drug quantity by a preponderance of the evidence. *United States v. Azmat*, 805 F.3d 1018, 1046 (11th Cir. 2015). The Guidelines do not permit the District Court to approximate the net weight of the seized

drugs. *See* U.S.S.G. § 2D1.1 comment. (n.1) (stating that the weight of drug mixture may be approximated if any other materials contained in the mixture "cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table."). All of the heroin seized is in the possession of the Government and can be weighed in its entirety to get an accurate weight. Instead the chemist tested and weighed only a small sample and then estimated the total weight of drugs in the government's possession. The approximate weight should not be used to sentence Mr. Robles Rivera and he submits the court find the quantity involved to be under 60 grams of heroin corresponding to base offense level 22.

**2. Objection to Classifying Arrests as "Other Criminal Conduct"**

The PSR has a two arrests placed in the section titled "Other Criminal Conduct" section of the report that need to be removed from the section. First, Mr. Rivera will explain how this inaccurate classification may affect him and then Mr. Rivera will address why their inclusion are in violation of Mr. Rivera's constitutional rights and not appropriate under the policy of the United States Probation Office. Pursuant to the United States Probation Office policy the offenses in ¶¶'s 36 and 37  belong in the "Other Arrests" section of the presentence report rather than the "Other Criminal Conduct" section.

**a.  Possible Effect of Inaccurate Classification of Criminal Conduct**

Offenses listed in the "Other Criminal conduct" section of a PSR are not harmless and can affect the sentence the defendant receives from the court and his treatment in the Bureau of Prisons. In reference to the "Other Criminal Conduct" section *The Guide to Judiciary Policy*, Volume 8, Part D, Chapter 3, § 335.60 (d) states:

 Although not used to determine the offender's criminal history category, the information reported in this section may be relevant to sentencing for several reasons.

>    (1)  Unadjudicated conduct similar to the instant offense behavior may make the commission of the instant offense more blameworthy or may indicate a propensity to engage in such conduct.
>    (2)  Unadjudicated conduct may also support an inference that the defendant committed the instant offense as part of a pattern of criminal conduct that provided a substantial portion of the offender's income.
>    (3)  Unadjudicated conduct:
>    - may indicate the offender's criminal history category is inadequate, and
>    - could be relevant to a decision to depart from the guidelines or impose a non-guideline sentence.
>    (4)  **Finally, unadjudicated conduct may be considered by the Federal Bureau of Prisons in making classification, designation, and programming decisions.**

Arrests classified  under the "Other Criminal Conduct" section can affect not only how the court sentences a defendant they may also affect how the Bureau of Prisons classifies the defendant. It is therefore important that the label "Other Criminal Conduct" be applied correctly.

**b. Unconstitutional to Label Arrests as "Criminal Conduct"**

Classifying the arrests in ¶36 and ¶37  as "Other Criminal Conduct" violates the defendant's Due Process rights under the Fifth Amendment and his Sixth Amendment rights to counsel, confrontation of witnesses and trial by jury. Allowing this category of non-convictions to be deemed "criminal conduct" subrogates  an individual's constitutional rights to the policy of the United States Probation Office. In neither of the offenses in ¶¶'s 36-37 did Mr. Rivera have an opportunity to cross examine witnesses, file motions to dismiss or have a trial by jury, yet these arrests are labeled "criminal conduct" by the United States Probation Office and considered by the court in sentencing. The prosecutor's office in each these cases elected not to pursue the cases. Nevertheless, the United States

Probation policy ignores that Mr. Rivera was unable to exercise his constitutional rights and instead substitutes their "investigation" for his constitutional rights in determining whether he committed a crime. The defendant requests that ¶¶'s 36 and 37 be stricken from the presentence report or alternatively move these arrests to the "other arrests" category.

### c. Paragraphs 36 and 37 Are Incorrectly Classified Under U.S. Probation Policy

Not only is  the classification of Mr. Rivera's arrests as "criminal conduct" is unconstitutional, even if it was constitutional the United States Probation Office fails to follow their own policy in classify these arrest as "Other Criminal Conduct." In describing what the "Other Criminal Conduct" section of the report should contain the Office of Probation and Pretrial Services Administrative Office of the Courts' policy states:

> (a)The information contained in this section assists the court in evaluating the adequacy of the criminal history category in reflecting the seriousness of the offender's past criminal behavior and in determining whether a departure may be warranted. The officer reports **reliable information** about other past criminal behavior that may indicate that the defendant's criminal history category does not adequately reflect the seriousness of the past criminal conduct, or the defendant's likelihood to commit future crimes.

*The Guide to Judiciary Policy*, Volume 8, Part D, Chapter 3, § 335.60 (a) (Emphasis added). A mere arrest is not necessarily reliable information but may trigger further investigation. *The Guide to Judiciary Policy*, Volume 8, Part D, Chapter 3, § 335.60 (c) states:

> **The mere fact that an offender was arrested is insufficient evidence of criminal conduct**, but may prompt the officer to make further inquiries about the underlying conduct. **Conduct is reported in Other Criminal Conduct only if there is reliable and persuasive information that the defendant committed a crime.**

(Emphasis added). Mr. Rivera's arrests for the offenses in ¶¶36 and 37 are insufficient to place the arrests in the other criminal conduct category further inquiry must be conducted by the probation office. The policy goes on to state:

> (e) The key to the decision to include or exclude information about criminal conduct in this section is whether there is reliable information to support the allegation of criminal behavior.
>
> > (1)  Entries in this section must be supported by "a sufficient indicia of reliability" (**see:** § 320 (Standard of Proof).)
> > (2)  **Court records and transcripts, reliable witness statements, official reports, and other documentation may be considered.**
> > (3)  **Arrests with no verifiable details or supporting documentation need not be reported.**
> > (4)  If there is no relevant information to report, this section may be omitted.

The only records relied upon to classify paragraphs 36 and 37 are arrest records. No witness statements or lab reports are used. To classify the arrest as "criminal conduct" the probation office must review court records, transcripts and other reliable reports and then apply the appropriate standard of proof. *The Guide to Judiciary Policy*, Volume 8, Part D, Chapter 3, § 335.20(a) outlines the appropriate level of investigation and proof.

> **§ 320 Standard of Proof**
>
> (a) During the presentence investigation, a probation officer has access to information from numerous sources. Some information may be obtained from highly reliable sources, **while other information may be highly speculative and potentially damaging to the defendant**.
>
> (1)  The probation officer should carefully evaluate any allegation about the defendant, particularly when such information cannot be **independently verified and is not particularly relevant to sentencing**.
>
> (2)  While the court may consider a vast amount of information in determining an appropriate sentence, **it is important that the probation**

**officer distinguish between information that is factual, inferred, or alleged**.

The arrest reports merely allege conduct. There is insufficient indicia of reliability for the documents reviewed for the placement of ¶¶'s 36 and 37 in the "Other Criminal Conduct" section and the appropriate location for ¶'s 36 and ¶37 is the "other arrests" section, which, according to policy, includes:

> **§ 335.80 Other Arrests (if applicable)**
>
> Report all other arrests of the defendant, unless the arrest was based on mistaken identity. Report the date of arrest, charge(s), agency, and disposition. This informs the court about the defendant's contact with law enforcement authorities. Because no reliable information establishes that the defendant committed a criminal act, such information may not be considered for a departure and is separated from Other Criminal Conduct.

*The Guide to Judiciary Policy*, Volume 8, Part D, Chapter 3, § 335.80.

In this instance the  U.S. Probation Office  "investigation" as to the reliability of the information simply involves reading a criminal report affidavit. This is not the fault of the officer on this case but general operational protocol. However, the policy requires far more investigation to determine the indicia of reliability. The fact that the prosecutor dropped the cases should be weighed in the evaluation under the presence or absence of corroborating information requirement in weighing the evidence, but it is not.

### d. Paragraph 36 is not Reliable to Prove "Criminal Conduct"

The addendum to the PSR indicates that the facts of ¶36 are the same as those in ¶32 and therefore are reliable. Paragraph 32 is a County Court conviction for possession of cannabis with an arrest date of March 21, 1998. Paragraph 36 alleges  possession of

cocaine, possession of cannabis and possession of drug paraphernalia on the March 21, 1998. However, the facts in paragraph 32 are not the same as those in paragraph 36. Paragraph 36 contains two additional charges including possession of cocaine. The State of Florida dismissed the possession of cocaine and possession of drug paraphernalia charges thirty days after Mr. Rivera's arrest. Common sense dictates that the State of Florida would pursue the possession of cocaine (the most serious charges) if there was a legal basis. The State of Florida's dismissal of the charges in Circuit Court and refiling of the charges in County Court is indicative of a problem with the felony charges. Perhaps, the suspected cocaine did not test out as cocaine. The probation office has provided no details to this offense other than the criminal report affidavit facts. The lab report has not been produced which may indicate that the suspected cocaine was not cocaine. The PSR makes determination of what is factual in this arrest.

### e. Paragraph 37 is not Reliable to Prove "Criminal Conduct"

The arrest in ¶37 was no-filed by the prosecutors within 26 days of Mr. Rivera's arrest apparently because the prosecution believed there was no legal basis to support a criminal prosecution of Mr. Rivera. The addendum to the PSR does not provide a basis for the inclusion of the arrest as other "criminal conduct" other than refer to the arrest report and stating:

> The facts for paragraph 37 were obtained from an arrest report that also included details of an executed search warrant. The probation office respectfully submits that both entries are supported by a sufficient standard of proof and should remain as written.

Doc. 59 P. 26 and 27. Relying on the mere arrest is inappropriate to classify as "criminal conduct." The facts included in the PSR suggest a confidential source who allegedly made

a heroin buy from a home where Mr. Rivera lived. There are no more facts provided indicating Mr. Rivera committed a criminal offense. The probation office provided no information regarding the inquiry conducted into the veracity of the confidential source used to allegedly make the control buy which is reflected in paragraph 37. Most importantly, the office of the State Attorney file was not obtained to determine why the prosecution was dismissed.

## C. Motion for Variance from the Otherwise Applicable Guideline Range

At time of sentencing Mr. Robles Rivera will request a variance from the otherwise applicable advisory guideline range pursuant to Title 18 U.S.C. §3553. Mr. Robles Rivera has struggled with drug addiction for most of his life. (Doc. 59 ¶50). He tested positive for drugs at the time of his arrest. (Doc. 59 ¶53). While on supervised release he was ordered to complete residential drug treatment.  Mr. Robles Rivera addiction was too strong and he simply could not complete the program. Despite leaving the program, Mr. Robles Rivera did not flee the charges and continued to keep in contact with his attorney. When a warrant was issued he went to the Orange County Jail to surrender himself. Mr. Robles Rivers has been incarcerated in the Pinellas County Jail for approximately five months. He is doing much better now that the he is free from drugs. He looks forward to continuing his sobriety and starting a drug treatment program.

Despite his drug addiction problem Mr. Robles Rivera has always worked to support himself. For two years prior to his arrest he worked at Halperns' Steak and Seafood warehouse located in Orlando. He also worked through employment agencies at several other positions in various warehouses as a contract employee. Mr. Robles Rivera is determined to conquer his drug addiction problem. Mr. Robles Rivera enjoys significant

support from his family in this goal. His family members  are supporting his sobriety and

want him to get appropriate treatment for his drugs addiction.

At the sentencing hearing the defendant will request the court fashion a sentence

that punishes him for his crime, but also recognizes that his addiction played a role in its

commission and provides for treatment for his addiction.

## D. Conclusion

The defendant moves this Court to sustain the above objections to the Presentence

Report.

Respectfully submitted,

FARMER & FITZGERALD, P.A.

*/s/Timothy J. Fitzgerald*
Timothy J. Fitzgerald, Esq.
FL Bar No. 0780618
400 N. Tampa St. Suite 2840
Tampa, FL 33602
(813) 228-0095
FAX (813) 224-0269
fflawpafedtjf@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing has been furnished by
cmecf on July 21, 2020 to the following:

AUSA Michael Sinacore
Office of the U.S. Attorney
400 North Tampa Street
Suite 3200
Tampa, FL  33602